UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VELETA SMITH,

Plaintiff,

v.

SENDERRA RX PARTNERS, LLC,

Defendant.
_________________________________/

Case No. 16-10131

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]**

Plaintiff Veleta Smith filed her Complaint [1] against Defendant Senderra RX Partners on January 14, 2016. Senderra filed a Motion for Summary Judgment [29] on October 21, 2016. The parties timely briefed the motion [31, 34] and the Court held a hearing on March 2, 2017. At the conclusion of the hearing, the Court granted Defendant's Motion for Summary Judgment [29]. This Opinion and Order supplements the Court's ruling.

For the following reasons, and for the reasons stated on the record, Defendant's Motion for Summary Judgment [29] is **GRANTED**.

**FACTUAL BACKGROUND**

Veleta Smith initially did very well at Senderra RX Partners: she was hired as a Customer Service Representative in May 2013 and less than a year later, she was promoted to Customer Service Team Lead. In 2015, however, the quality of Smith's

performance deteriorated, and she violated Senderra's attendance policy on multiple occasions. In August 2015, Smith's supervisors attempted to help her get back on track by placing her on a Performance Improvement Plan. They also offered Smith information about the Family Medical Leave Act ("FMLA") after learning that her 10-year-old daughter Ashley suffered from bladder issues. Senderra's efforts notwithstanding, Smith's transgressions continued; notably, between September 3, 2015 and September 9, 2015, Smith failed to show up for work without notifying anyone of her absence. On September 9, 2015, Senderra sent Smith a letter acknowledging receipt of, and accepting, her resignation. Smith sued Senderra, alleging that Senderra interfered with her FMLA rights and retaliated against her.

## LEGAL STANDARD

When evaluating a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Defendant, as the moving party, has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

Assessing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, the Court finds that there is nothing from which a jury could infer that Senderra interfered with or retaliated against Plaintiff. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### I. FMLA Interference

Plaintiff's FMLA interference claim fails because she cannot show that she was entitled to leave under the FMLA; that she gave Senderra notice of her intention to take leave; and that Senderra denied her FMLA benefits to which she was entitled. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).

#### A. Plaintiff was not entitled to FMLA-leave, and therefore, Senderra did not wrongfully deny her anything to which she was entitled.

Defendant correctly points out that Plaintiff was not entitled to leave under the FMLA because, as the evidence reveals, it was not medically necessary for Plaintiff to stay home with her daughter. 29 U.S.C. § 2612(b)(1); *see also Lane v. Pontiac Osteopathic Hospital*, No. 09-12634, 2010 U.S. Dist. LEXIS 610003, at *10 (E.D. Mich. June 1, 2010) (the statute allows for an employee to take FMLA leave "only . . . when [she] is 'needed to care' for a family member."). The FMLA Medical Certification from Ashley's doctor specified that it was appropriate for Plaintiff to

take leave from work when accompanying her daughter to a medical appointment. However, Ashley did not have any doctor's appointments after August 13 – the date on which Defendant approved Plaintiff's FMLA leave. Therefore, her unexcused absences from work on August 26 and from September 3-9 were not medically necessary. There was simply no FMLA-qualifying reason for Plaintiff to be absent from work on those dates. Additionally, although there are certain circumstances in which an employee can take FMLA leave to provide psychological comfort and reassurance to a sick child, *see* 29 C.F.R. § 825.124(a),[1] Plaintiff only ever told Defendant that she needed to stay home because she was uncomfortable leaving Ashley alone in the evenings – not because Ashley was sick and needed Plaintiff's care. *See* Pl.'s Ex. 1 at 134:10-14. Furthermore, Plaintiff cannot plausibly argue that it was medically necessary to give up her late shift when she admitted that none of Ashley's doctor's appointments took place between 6 and 8 PM.

In sum, Plaintiff has "put forth no evidence to suggest [that Plaintiff being at work would] place[] her daughter in danger of not receiving the necessary care." *Overley v. Covenant Transport, Inc.*, 178 F. App'x 488, 495 (6th Cir. 2006).

Plaintiff also appears to completely gloss over the fact that she violated Defendant's attendance policy on multiple occasions throughout 2015, well before the possibility of FMLA leave was ever mentioned to her. *See* Def.'s Ex. 6. Even

---

[1] These circumstances include "situations, where, for example . . . psychological comfort and reassurance . . . would be beneficial to a child . . . with a serious health condition who is receiving inpatient or home care." 29 C.F.R. § 825.124(a).

assuming Plaintiff was FMLA-eligible, she did not follow Defendant's attendance protocols. She knew that she should have called in to notify someone of her absences in August and September 2015, yet she failed to do so. These attendance issues provided Defendant with "a legitimate reason unrelated to the exercise of FMLA rights for" accepting Plaintiff's resignation and ending her employment. *Ritenour v. Tenn. Dep't of Human Servs.*, 497 Fed. Appx. 521, 530 (6th Cir. 2012) (unpublished).

**B. Plaintiff failed to give Defendant notice of her intention to take leave**

The language of the FMLA regulations "explicitly permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances." *Srouder v. Dana Light Axle Mfg.*, LLC, 725 F.3d 608, 614 (6th Cir. 2013). Plaintiff admitted during her deposition that she knew – and did not comply with – Defendant's attendance policies. (Pl.'s Ex. 1 at 95:2-4, 96:6-17, 101:1-4). She also knowingly violated the terms of her performance improvement plan. *Id.* at 102:15-21. The evidence in the record shows that Plaintiff's repeated violations of Defendant's attendance policy justified Defendant's decision to accept her resignation.

**II. FMLA Retaliation**

To establish her prima facie case of FMLA retaliation, Plaintiff must show that (1) she engaged in FMLA-protected activity; (2) Senderra knew that she was exercising FMLA rights; (3) she suffered an adverse employment action; and (4) there was a causal connection between the FMLA-protected activity and the adverse

employment action. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012). Once Plaintiff satisfies her prima facie case, the burden shifts to Defendant to provide a legitimate, non-discriminatory reason for the adverse employment action. The burden then returns to Plaintiff to show that Defendant's proffered reason is pretextual. *Id.* at 285.

Although there is scant evidence in the record indicating any causal connection between the FMLA-protected activity – Plaintiff's acceptance of her supervisor's offer to learn more about her FMLA eligibility – and the adverse employment action, the Court will assume that Plaintiff has set forth a prima facie case of unlawful retaliation. At this point in the burden shifting analysis, Senderra must proffer evidence of a legitimate, non-discriminatory reason for the adverse action. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) ("The defendant must clearly set forth . . . reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful [retaliation] was not the cause of the employment action."). Defendant has presented extensive evidence justifying its decision to terminate Plaintiff's employment: a series of attendance and performance infractions throughout 2015 that constituted violations of Senderra's policies, and the fact that Plaintiff failed to show up to work – or give notice of her absences – for nearly one week.

Plaintiff can still defeat summary judgment if she produces "adequate evidence demonstrating that [Senderra's] proffered reason was a pretext for discrimination." *Seeger*, 681 F.3d at 285. This she cannot do: she has not adduced any evidence "from

which the jury could reasonably reject [the defendant's] explanation and infer that the defendant intentionally discriminated against [her]." *Clark v. Walgreen Co.*, 424 Fed. Appx. 467, 474 (6th Cir. 2011) (unpublished). Plaintiff's attendance and performance issues caused her employment to end in September 2015. The record evidence – including notes and testimony from Plaintiff's supervisors – illustrate Plaintiff's bad habits; she was not consistently present at the office, was often away from her desk, gossiped with others in her office, and did not follow Senderra's attendance policy. *See*, *e.g.*, Def.'s Ex. 4.

**CONCLUSION**

Plaintiff lacks evidence to support her claim that her request for FMLA-leave was in any way related to the termination of her employment with Senderra. Accordingly, for the reasons discussed above, and for the reasons given on the record,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [29] is **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: March 6, 2017